UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BONTA, LLC,

        *Plaintiff,*

    v.

CITY OF MARYSVILLE, a municipal corporation,

        *Defendant.*

CASE NO. 2:18-cv-01544-BJR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter involves a dispute between Plaintiff Bonta, LLC ("Bonta") and the City of Marysville, Washington (the "City") over local zoning codes and their application to commercial property owned by Bonta. The case was removed to this Court because, in addition to its state law claims, Bonta alleges violations of the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution. Before the Court are both the City's and Bonta's Motions for Summary Judgment. Dkt. No. 22 and 25. Having reviewed the motions, oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant the City's motion as to the federal law claims and deny Bonta's motion as to those same claims. Having done so, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice. The reasoning for the Court's decision follows.

1

## II. BACKGROUND

At issue is property located at 1217 1ˢᵗ Street, Marysville, WA 98270 (the "Property"). Bonta owns the Property and leases it to Kodiak Industrial Solutions, LLC ("Kodiak"), which runs a spray-on coating business. Dkt. No. 22 at 3–4; Dkt. No. 25 at 4. Bonta has owned the Property since 2012 and, after running a business there for some time, sold the business and began leasing out the Property instead. Kodiak executed a lease with Bonta on September 11, 2017.

The Property is located in Marysville's Downtown Commercial zone. On November 27, 2017, Kodiak applied to the City for a business license, describing its business as "specialty coating applicator and industrial cleaning contractor." Dkt. No. 22 at 4. At the time, Kodiak described its use of the Property to the City as a "base for employees where material and equipment would be stored." *Id.* at 14 (quoting Dkt. No. 28-10 at 2). From there, Kodiak explained, "an employee arrives at the beginning of their shift to get whatever materials are needed for the specific jobs they have for that day, load the materials into the company vehicle, and depart." *Id.* Based on this description, the City determined that storage was the only thing the property would be used for and classified the business as "Contractor's Office and Storage Yard." *Id.* at 4, 14.

Pursuant to that classification, Kodiak was required to comply with local Marysville Municipal Code ("MMC") § 22C.020.070(30), which provides:

> Outdoor storage of materials or vehicles must be accessory to the primary building area and located to the rear of buildings. Outdoor storage is subject to an approved landscape plan that provides for effective screening of storage, so that it is not visible from public right-of-way or neighboring properties.

MMC § 22C.020.070(30) ("Outdoor Storage Provision").

According to the City, both Kodiak and Bonta are currently in violation of the Outdoor Storage Provision because "[t]here is substantial outdoor storage (of several trucks and other

2

supplies). It is not in the rear of the building. There is no approved landscape plan. And this is visible from virtually every direction." Dkt. No. 22 at 2. Bonta, for its part, does not dispute that there is noncomplying storage at the Property. *See* Dkt. No. 25 at 4. Instead, it claims that the storage should be permitted as a "historical non-conforming use" of the Property) and further alleges that the City treats its property different from two nearby properties, which similarly store vehicles and storage outside without shielding them from the public right-of-way. *Id.* at 4–5.

The City first attempted to work with Kodiak to bring its business into compliance. Dkt. No. 22 at 5. The City issued Kodiak a temporary permit to allow it to operate through May 1, 2018, and later extended the permit to July 1, 2018 when Kodiak requested additional time to relocate its business. *Id.*

Bonta, however, in an effort to assist its tenant, filed an appeal of the Marysville Director of Community Development's April 4, 2018 administrative ruling that Kodiak could continue its business only if it complied with the Outdoor Storage Provision. Dkt. No. 22 at 5. On August 29, 2018, an administrative hearing was held before a Hearing Examiner, who issued a Decision against Bonta on September 20, 2018. Dkt. No. 1-2 at 3; Dkt. No. 22 at 8. Bonta appealed this decision to the Superior Court for the State of Washington under Washington's Land Use Petition Action ("LUPA"), RCW Ch. 36.70C. Dkt. No. 22 at 8.

Additionally, around this time, Bonta submitted numerous record requests to the City for information related to the Property, with which it maintains the City has still not fully complied. Dkt. No. 25 at 5–6. Along with its Land Use Petition, Bonta filed a complaint alleging four causes of action: (1) Void For Vagueness under the United States Constitution and Washington State Constitution; (2) Violation of the Equal Protection Clause under the United States Constitution

3

and Washington State Constitution; (3) Violation of Washington Public Records Act, RCW 42.56, *et seq.*; and (4) Intentional Interference with Business Expectancy. Dkt. No. 1-2 at 9–12.

The matter was removed from Superior Court citing Bonta's invocation of 42 U.S.C. § 1983. Dkt. No. 1-1. On October 4, 2019 both parties moved for Summary Judgment. Dkt. Nos. 22 and 25.

### III. LEGAL STANDARD

Summary Judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "A fact is 'material' if it might affect the outcome of the case." *California Expanded Metal Prod. Co. v. Klein*, 396 F. Supp. 3d 956, 967 (W.D. Wash. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001); *see also Anderson*, 477 U.S. at 248 ("a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Finally, a movant is entitled to judgment "as a matter of law" where the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The movant bears the initial burden of showing there is no genuine issue of material fact and that they are entitled to prevail as a matter of law. *See Massachusetts Bay Ins. Co. v. Walflor Indus., Inc.*, 383 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019) (citing *Celotex*, 477 U.S. at 323). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in

support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also Massachusetts Bay Ins.*, 383 F. Supp. 3d at 1156. In such circumstances, the Court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)); *see also Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) ("the court must consider each party's evidence, regardless under which motion the evidence is offered").

## IV. DISCUSSION

### A. Bonta's Motion for Summary Judgment

*1. Void for Vagueness*

Bonta's complaint asserts a cause of action for "void for vagueness, under the Fourteenth Amendment to the United States Constitution" seeking a declaration that the Outdoor Storage Provision is unconstitutional. Dkt. No. 1-2 at ¶ 9–10. Bonta moves for summary judgment on this claim. *See* Dkt. No. 25 at 8–9. The City opposes and claims that the Outdoor Storage Provision is sufficiently clear, and that Bonta has failed to show otherwise. *See* Dkt. No. 22 at 9–12; Dkt. No. 31 at 3–5.

The complaint appears to challenges the regulation's use of the words "storage," "vehicles," and "parking," claiming they are "impermissibly vague and ambiguous." Dkt. No. 1-2 at 10. Bonta's motion for summary judgment, however, does little to elaborate on this cause. Instead, in its section entitled "Downtown Commercial Code is Unconstitutionally Vague," it

states that the City's zoning code "violates the Washington and Federal Constitutions" and then provides a number of conclusory statements that do not address any of the words which it challenged in its complaint. *See* Dkt. No. 25 at 8–9. Thus, broadly, Bonta's complaint appears to be that the code fails to provide a clear standard to apply.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019). But, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language," *Grayned*, 408 U.S. at 110, and thus, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

This doctrine incorporates two related requirements. *See Edge*, 929 F.3d at 664. First, "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108; *see also Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men [or women] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law"). Second, a law must "provide explicit standards for those who apply them" in order to avoid "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108; *see also Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 555 (9th Cir. 2004) (internal citations removed) ("[a] law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement").

"[E]conomic regulation is subject to a less strict vagueness" than criminal laws, *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982), but the "vagueness analysis still applies to such regulation," *Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir. 1985); *see also BJP, L.L.C. v. Kitsap Cty.*, No. 10-5678, 2011 WL 3298661, at *7 (W.D. Wash. Aug. 1, 2011). Additionally, "greater tolerance" is afforded to "enactments with civil rather than criminal penalties" and laws that do not "inhibit the exercise of constitutionally protected rights" are held to a less stringent standard than ones that do. *Flipside*, 455 U.S. at 498–99.

First, Bonta fails to provide sufficient evidence to support its claim. The sole evidence provided to support its void for vagueness claim is two email chains from an associate planner employed by the City. *See* Dkt. No. 25 at 9 (relying on Dkt. No. 28-10); Dkt. No. 33 at 18–19 (relying on Dkt. No. 28-9 and Dkt. No. 28-10). The first chain, Bonta claims, shows an inconsistency in the application of the City's zoning code because the city planner appears to represent to a potential buyer of the Property that it may be "legal non-conforming," *i.e.*, that it was grandfathered into permissible noncompliance with the Outdoor Storage Provision, whereas in the case before the Court the City now claims it is not legal non-conforming. Dkt. No. 33 at 18–19 (relying on Dkt. No. 28-9). In the second email, Bonta avers that the city planner, while emailing with other city employees, first suggested that Kodiak's business was not permitted downtown under the zoning code, but "less than 24 hours later," the same employee offered a different categorization of Kodiak's business which would be permitted. Dkt. No. 25 at 9 (relying on Dkt. No. 28-10); *see also* Dkt. No. 33 at 2 ("The City's own efforts to interpret its code illustrate that the code contains no ascertainable standards for adjudication, as illustrated by the City's inability to confidently or consistently interpret the code.").

7

The city planner's emails, however, do not support Bonta's challenge to the Outdoor Storage Provision. The first clearly shows that the city planner told the prospective purchaser that the Property *used to be* legal non-conforming, but that under current zoning code, if the previous use was "discontinued or abandoned for a period of 12 consecutive months or more," then the Property would lose its non-conforming status. Dkt. No. 28-9 at 2. The city planner makes no affirmative conclusion on the status of the Property and clearly states, "I would likely need to contact the building owner to determine when the previous tenant actually stopped operating." Dkt. No. 28-9 at 2.

The second email chain merely shows that the city planner was inquiring as to what the classification might be, not having as of yet decided. Dkt. No. 28-9 at 2–3. She enquires if "there were not any conversations that [she was] not aware of that may have given them permission to operate this type of business at the location." *Id.* at 3. Later, however, she follows up explaining to her co-workers that she has spoken with a representative from Kodiak, who has explained their business. Based on that explanation, she states that "I suppose, based on his description of activities, we could categorize it as a Contractors' office and storage yard," which is the determination later designated, but that the categorization is "subject to the outdoor storage of materials/vehicles being accessory to the primary building area and located to the rear of buildings, and an approved landscape screening plan." *Id.* at 2.

Thus, neither email chain shows either a vagueness in the ordinance itself nor in the application of the zoning code as a whole. In fact, neither email even addresses the Outdoor Storage Provision specifically, nor its use of the terms "storage," "vehicles," and "parking." Both email chains show no indeterminacy, merely a city planner's process of applying the zoning code

8

in her day-to-day work.

Having determined that Bonta has failed to produce evidence of vagueness, the Court determines that there is no suggestion that the ordinance itself, or the words "storage," "vehicles," and "parking," would leave a person of ordinary intelligence without a reasonable guide to what is prohibited. In fact, the statute is quite clear as to the actions it prohibits. Further, those prohibitions do not extend so far as to permit arbitrary enforcement. Instead, it applies only to certain defined categories of business, in certain defined zones, and provides a clear means of compliance (an "approved landscape plan" that hides the storage from public rights-of-way).

Thus, as the ordinance is not facially vague and Bonta provides no support for its claim, the Court will deny its Motion for Summary Judgment.

*2. Equal Protection*

Next, Bonta advances a cause of action for a "violation of the Equal Protection Clause under the United States Constitution." Dkt. No. 1-2 at 10. The complaint, rather vaguely, asserts that "[t]he land use provisions as applied to the Property, Bonta, and Bonta's tenant(s) are unconstitutional in that the city has acted arbitrary and capricious manner." *Id.* Bonta now moves for Summary Judgment on its claim. *See* Dkt. No. 25 at 10–11. The City opposes the motion. Dkt. No. 22 at 12–15; Dkt. No. 31 at 5–8.

Bonta's motion claims that "the City clearly violated the Washington and Federal Constitutions by acting arbitrarily and capriciously in its application and enforcement of the land use provisions of the code when it permitted others to use their properties in a manner that clearly violates current codes applicable to the [Downtown Commercial] zone." Dkt. No. 33 at 2–3. The sole evidence for Bonta's alleged Equal Protection violation is that the City has permitted two

nearby properties to store vehicles and storage in a manner Bonta is prohibited from doing. *See id.* at 19; *see also* Dkt. No. 25 at 5, 10–11.

The Supreme Court has recognized a "class of one" cause of action for plaintiffs alleging they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The bar is extremely high and "must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Olech*, 528 U.S. at 565 (Breyer, J. concurring)). Thus, "to succeed on its 'class of one' claim, [Bonta] must allege that the City: (1) intentionally (2) treated [Bonta] differently than other similarly situated property owners (3) without a rational basis." *Bldg. 11 Inv'rs LLC v. City of Seattle*, 912 F. Supp. 2d 972, 983 (W.D. Wash. 2012) (citing *Willowbrook*, 528 U.S. at 564; *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)).

In order to meet this standard, a plaintiff must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Hood Canal Sand & Gravel, LLC v. Brady*, 129 F. Supp. 3d 1118, 1125 (W.D. Wash. 2015) (quoting *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)); *see also Haglund v. Sawant*, No. 17-1614, 2018 WL 2216154, at *4 (W.D. Wash. May 15, 2018), *aff'd*, 781 F. App'x 586 (9th Cir. 2019). Additionally, local governments "generally have broad discretion when it comes to the enactment of land use and zoning laws and regulations." *Waimea Bay Assocs. One, LLC v. Young*, 438 F. Supp. 2d 1186, 1190 (D. Haw. 2006), *aff'd sub nom.* Waimea Bay Assocs. One, LLC v. Thielen, 264 F. App'x 561 (9th Cir. 2008); *see also Schad v. Borough of Mount Ephraim*, 452 U.S.

61, 68 (1981) ("The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities."). Plaintiffs bear the burden of establishing that without a rational basis they have been intentionally treated differently from others similarly situated. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (citing *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002)).

Here, Bonta identifies two "similarly situated" properties. The first is the "old Welco property," located at 1218 1st Street down the street from the Bonta Property, which Bonta claims was vacant for some time before the City purchased it in 2016. "Since the City took ownership," Bonta avers, "the property has consistently been used to store construction trucks, machines and materials, which is not a historical non-conforming use, and is completely visible from public right-of-way and neighboring properties." Dkt. No. 25 at 5; *see also* Dkt. No. 33 at 6.

According to the City, it purchased the Welco property "with the intention of using it to stage construction vehicles for freeway improvements" which is a temporary use, terminating when construction is completed. Dkt. No. 22 at 13. This is a completely different use from the "Contractor's Office" into which Kodiak falls. *Id.* As the City asserts, "[i]t is a different use and purpose." *Id.* Further, the City asserts, the properties were treated exactly the same. As the City claims, "both properties received a temporary permit for the storage. The only difference is that Kodiak's permit has" now expired. *Id.* at 14. Bonta fails to refute or even address the dissimilarities pointed out by the City. *See generally* Dkt. No. 33 at 6, 19 (merely repeating its claim that the City's use of the property "would clearly be in violation of the current codes applicable to the [Downtown Commercial] zoned properties").

The Court, therefore finds that the Welco property does not constitute an instance of disparate treatment. First, Bonta has failed to demonstrate that the properties are in fact similarly situated. Bonta has also failed to demonstrate that the City intentionally dissimilarly zoned the properties or enforced the Outdoor Storage Provision. *See N. Pacifica LLC*, 526 F.3d at 486 ([a] class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed . . . to being an accident or a random act'") (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)).

The second property Bonta points to as evidence of inequitable treatment is the New Baptist Church, located at 114 Beach Ave. *See* Dkt. No. 25 at 5. Bonta claims that the Church "purchased property across the alley to the north of the Bonta Property in 2007" and now parks buses at the property. *Id.* Bonta claims this shows inequitable treatment as the parking lot "is not adjacent to the Church" and "not a historical non-conforming use" but that the City "has allowed the Church to use it as a parking lot for its buses and occasional storage containers for almost a decade." *Id.*

The City responds that the Church does indeed have two buses and a storage container but that "[t]hese are accessory uses to the church, as they are subordinate and incidental to the primary use, *i.e.*, church activities." Dkt. No. 22 at 14. Bonta does not contest this difference, and instead merely reiterates its conclusory claim of disparate treatment. *See* Dkt. No. 33 at 6.

Similar to the Welco property, it is clear that the Bonta Property and the Church are not similarly situated. The underlying purposes and uses of each building are facially dissimilar, providing numerous rational bases for treating the properties differently. One basis provided by the City, for example, is the frequency and primacy of the outdoor storage. As the City points out,

the Church's use of parking is only ancillary to its primary purpose and limited to a small number of buses and occasional outdoor storage. By contrast, the City points out that Kodiak's primary purpose for using the Bonta Property is for storage of commercial vehicles and equipment, which "directly contradicts the code itself." Dkt. No. 22 at 14. Bonta, for its part, has provided no evidence to show that the properties are similar in nature. *See Thornton*, 425 F.3d at 1168 ("Evidence of different treatment of unlike groups does not support an equal protection claim.").

Bonta, therefore, has failed to present any evidence to support its claim for an Equal Protection violation. Based on the foregoing, the Court will deny Bonta's Motion for Summary Judgment.

### B. The City's Motion for Summary Judgment

The City moves for summary judgment in its own right on Bonta's Void for Vagueness and Equal Protection claims, arguing that Bonta has failed to meet its burden to establish its claims. Dkt. No. 22 at Dkt. 9–12, 12–15. As established above, Bonta has failed to establish a prima facie case for either claim. As such, the Court will grant the City's Motion for Summary Judgment as to both claims.

### C. Remaining Claims

Bonta's remaining invocation of federal law is for "[a]n award of Bonta's costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988." Dkt. No. 1-2 at 13; *see also* Dkt. No. 25 at 1–2 (only mention of § 1983 in summary judgment motion is "Bonta seeks summary judgment and the granting of an order . . . award[ing] [] Bonta's costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988").

Both statutes require Bonta to show an actual deprivation of a protected constitutional right.

*See* 42 U.S.C. § 1983 ("[e]very person who, under color of any statute .. subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ."); 42 U.S.C. § 1988(b) ("[i]n any action or proceeding to enforce a provision of [list of civil rights statutes], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"). As Bonta has not prevailed on any of its federal law claims, there are no grounds to grant such fees.

The remainder of Bonta's claims are state law claims. The Court will decline to exercise supplemental jurisdiction over the state law claims and dismisses them without prejudice. 28 U.S.C. § 1367; *see also Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's motion for summary judgment, Dkt. No. 22, and DENIES Plaintiff's motion for summary judgment, Dkt. No. 25, and DISMISSES Plaintiff's federal claims with prejudice and Plaintiff's state claims without prejudice.

DATED this 14th day of November, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

14